IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| WILLIAM WARREN CHILDS., | CV 20-149-M-KLD |
| Plaintiff, | |
| vs. | ORDER |
| KILOLO KIJAKAZI, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq.

## I.   **Procedural Background**

Plaintiff filed an application for supplemental security income benefits on June 11, 2019, alleging disability since August 1, 2014. [1] (Doc. 11 at 23). Plaintiff's claim was denied initially, on reconsideration, and by ALJ Barbara J Zanotti on May 20, 2020. (Doc. 11 at 23-33).  The appeals council denied Plaintiff's request for review, thereby making the ALJ's decision dated May 20, 2020, the agency's final decision for purposes of judicial review. Jurisdiction vests

---

[1] Prior to the hearing, Plaintiff amended his alleged onset date to June 1, 2018.

1

with this Court pursuant to 42 U.S.C. § 405(g).

## II.   **Legal Standards**

### A. Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity,

allowing for judicial review of social security benefit determinations after a final

decision of the Commissioner made after a hearing. See *Treichler v. Commissioner

of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside

the Commissioner's decision "only if it is not supported by substantial evidence or

is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is

responsible for determining credibility, resolving conflicts in medical testimony,

and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

2001). "Where evidence is susceptible for more than one rational interpretation,"

the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679

(9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless

error, which exists when it is clear from the record that 'the ALJ's error was

inconsequential to the ultimate nondisability determination.'" *Tommasetti v.

Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*,

466 F.3d 880, 885 (9th Cir. 2006)).

### B. Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). See also *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, she must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation processes.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to

engage in past work, the burden shifts to the Commissioner at step five to establish

that the claimant can perform other work that exists in significant numbers in the

national economy, taking into consideration claimant's residual functional

capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and

416.920(4)(v). The ALJ may satisfy this burden through the testimony of a

vocational expert or by referring to the Medical-Vocational Guidelines set forth in

the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this

burden, the claimant is not disabled.

### III.   <u>Discussion</u>

The ALJ followed the five-step sequential process in evaluating Plaintiff's

claim. At step one, the ALJ found Plaintiff met the insured status requirements of

the Social Security Act through September 30, 2020. The ALJ further found that

Plaintiff had not engaged in substantial gainful activity since June 1, 2018, the

amended alleged onset date (20 CFR 404.1571 *et seq*.) (Doc. 11 at 25).

At step two, the ALJ found that Plaintiff had the following severe

impairments: (1) degenerative disc disease, (2) degenerative joint disease, (3)

adjustment disorder, (4) anxiety disorder, (5) Posttraumatic disorder (PTSD), (6)

COPD, (7) history of traumatic brain injury (TBI), (8) obesity, (9) tinnitus/ hearing

impairment, and (10) seizure disorder with resulting migraine headaches. (Doc. 11

at 25). She further noted that these impairments limit the ability for Plaintiff to

perform some basic work activities. (Doc. 11 at 25). The ALJ also noted minor

impairments such as astigmatism, IBS, and fatigue. The ALJ found these

impairments do not cause more than minimal limitation on Plaintiff's work

abilities. (Doc. 11 at 26).

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that met or medically equaled any impairment

described in the Listing of Impairments, 20 C.F.R. §§ 404.1520(d), 416.920(d); 20

C.F.R. pt. 404, subpt. P, app. 1. (Doc. 11 at 26).

The ALJ found Plaintiff had the residual functional capacity to perform a

range of light work as follows:

> [h]e is further limited to only occasional pushing and/or pulling with
> the lower extremities.  He can occasionally perform the postural
> activities, including climbing ramps and stairs, balancing, stooping,
> kneeling, crouching, and crawling, but can never climb ladders, ropes,
> or scaffolds.  The claimant can have no more than occasional
> exposure to atmospheric irritants, such as dust, odors, fumes, and
> gases and can never be exposed to workplace hazards, such as
> unprotected heights; moving machinery; open flame; open bodies of
> water; heated equipment such as cooktops and ovens, dry cleaning
> presses and the like, or hand power tools.  He can neither be exposed
> to vibration nor more than a moderate noise level, as the term
> moderate is defined in the SCO.  He is limited to unskilled work with
> simple, routine, and repetitive tasks with a reasoning level of 1-2.
> Finally, the claimant is limited to no more than occasional work-
> related interaction with the general public, no more than occasional
> interaction with supervisors, and no more than occasional changes in
> the general nature of the work setting or tasks to be performed.

(Doc. 11 at 27).  At step four, the ALJ determined Plaintiff could not perform past

relevant work as an infantryman or canine instructor/trainer. (Doc. 11 at 31).
Proceeding to step five, the ALJ found based on the vocational expert's testimony
that there were other jobs existing in significant numbers in the national economy
that Plaintiff could perform, including marker, router and photocopy machine
operator. (Doc. 11 at 32).

Plaintiff argues the ALJ decision is not supported by substantial evidence
and raises three main issues on appeal. First, Plaintiff argues the ALJ improperly
assessed and rejected the opinions of his treating physicians and health care
providers. Second, Plaintiff contends the ALJ failed to consider SSR 96-8p, which
requires the ALJ to consider the effects of Plaintiff's medical treatments,
specifically the frequency and duration of treatment and disruption to routine, and
improperly discounted treating provider testimony and Plaintiff's own testimony
when determining Plaintiff's RFC. Finally, Plaintiff argues the ALJ erred by
relying on vocational expert testimony elicited in response to an incomplete
hypothetical question. Although Plaintiff has listed three seemingly overlapping
issues, for purposes of clarity, the Court has restated them and will address each
argument in turn.

### A. Medical Opinion Evidence

When assessing a claimant's residual functional capacity, the ALJ must
provide a "substantive basis" for rejecting a medical opinion or crediting one

7

medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 102 (9th Cir. 2012). The Ninth Circuit has repeatedly held that an ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting a treating or examining physician's uncontradicted opinion, and specific and legitimate reasons for rejecting a treating or examining physician's contradicted opinion. See *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). The ALJ could meet this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675.

For all claims filed after March 27, 2017, the Social Security Administration has amended the rules regarding the evaluation of medical opinion evidence at the administrative level. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Under the new regulations, the ALJ "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017). *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). These regulations do away with the traditional hierarchy between treating, examining, and non-examining physicians, and instead direct the ALJ to consider all medical opinions and prior administrative medical findings, and evaluate their

persuasiveness using several listed factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a).

Those factors include supportability, consistency, relationship with the claimant,

specialization, and "other factors that tend to support or contradict a medical

opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c),

416.920(c). The two most important factors are supportability and consistency. 20

C.F.R. §§ 404.1520c(a), 416.920(a).

The regulations require the ALJ to articulate how persuasive she finds all of

the medical opinions and prior administrative medical findings, and set forth

specific "articulation requirements" for the ALJ's evaluation of the medical

opinion evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b). When one medical

source provides multiple opinions, the ALJ is not required to articulate how she

"considered all of the factors for all of the medical opinions" and will instead

articulate how she considered those opinions "together in a single analysis using

the factors" listed above. 20 C.F.R. §§ 404.1520c(b)(1), 416.920(b)(1). Because

supportability and consistency are the most important factors, the ALJ must

explain how she considered these factors in the decision. Generally, the ALJ is not

required to explain how she considered the remaining factors. 20 C.F.R. §§

404.1520c(b)(2), 416.920(b)(2). However, when the ALJ finds that two or more

medical opinions are equally well-supported and consistent with the record but are

not exactly the same, she must articulate how she "considered the other most persuasive factors." 20 C.F.R. §§ 404.1520c(b)(3), 416.920(b)(2).

Because Plaintiff filed his claim for disability on June 11, 2019, the revised regulations apply in this case.  The Ninth Circuit has not yet addressed whether the new regulations meaningfully change how courts are to review the adequacy of an ALJ's reasoning, and whether an ALJ is still required to provide "clear and convincing" or "specific and legitimate" reasons for rejecting a treating or examining medical source opinion. See e.g. *Sergio L. v. Kijakazi,* 2021 WL 549441, at * 5 (C.D. Cal. Nov. 22, 2021); *Brandee M. v. Saul*, 2021 WL 2781803, at *3 (C.D. Cal. July 1, 2021).

Nevertheless, while the new regulations eliminate the hierarchy between treating, examining, and non-examining medical sources, the ALJ must still provide legally sufficient reasons supported by substantial evidence for finding a medical opinion unpersuasive. *Beason v. Saul*, 2020 WL 606760, *3 (C.D. Cal. Feb. 7, 2020). The "new regulations still require the ALJ to explain his or her reasoning to specifically address how he or she considered the supportability and consistency of the medical opinion." *Brandee M.*, 2021 WL 2781803, at *3 (citing 20 C.F.R. §§ 404.1520c, 416.920c).

Thus, the Court must determine whether the ALJ properly evaluated the medical opinions using the factors set forth above. *See e.g.,* *Ryan L.F. v. Commissioner of Social Security,* 2019 WL 6468560 *3-4 (D. Or. Dec. 12, 2019).

      i.  Veterans Administration Disability Rating

As a threshold matter, to the extent that Plaintiff appears to argue his VA disability rating should have been a focus for the ALJ, he is incorrect as a matter of law. For claims filed on or after March 27, 2017, the regulations make clear that disability determinations from other governmental agencies are "inherently neither valuable nor persuasive to the issue of whether [the Plaintiff] is disabled." 20 C.F.R. § 404.1520(b)(c)(1). Accordingly, the ALJ is not required to "provide any analysis about how [she] considered such evidence in [her] determination or decision" regarding Plaintiff's claimed disability. 20 C.F.R. § 404.1520(b)(c)(1). The ALJ is still required to consider any supporting evidence that the other agency may have considered in reaching its decision if that evidence has been received in the claim before the ALJ. 20 C.F.R. § 404.1504.

In her order, the ALJ noted that the VA had determined Plaintiff had a 100% service-connected disability, but concluded that because the VA uses a different disability standard, that determination was "of little utility" in the ALJ's analysis. Because Plaintiff's claim was filed after March 27, 2017, the ALJ was not required to provide any further analysis about the VA's disability determination, and so

complied with the applicable regulations.

ii.  Plaintiff's VA medical providers

In his brief, Plaintiff argues that the ALJ failed to provide any justification for discounting the findings and opinions of the VA physicians.  Although he does not specifically identify which findings he believes the ALJ overlooked or whose opinions she discounted, Plaintiff generally states that the ALJ ignored records which established Plaintiff had daily headaches, weekly migraine headaches, light and noise sensitivity, lightheadedness and blurred or double vision.  (Doc. 13 at 17).  Plaintiff also argues the ALJ discounted Plaintiff's mental impairments and seizure disorders.[2]  However, a review of the ALJ's decision reveals the exact opposite:  the ALJ considered and accepted the findings of the VA providers and incorporated those findings into her decision.

The ALJ considered the medical records from the VA and discussed them in her decision.  Specifically, the ALJ noted that Plaintiff's medical records "generally show minimal concentration, cognitive or social limitation."  (Doc. 11 at 29).  In support of that conclusion, the ALJ relied on Plaintiff's neurological and neuropsychological examination notes from August 26, 2019 and October 28, 2019.  In the August 26, 2019 examination notes, VA neuropsychologist Dr.

_____

[2] Plaintiff does not appear to challenge the ALJ's conclusions regarding his physical limitations relating to his degenerative disc disease, degenerative joint disease, COPD, or obesity.

Bolanos noted that although Plaintiff had a history of mild TBI and complex partial seizures, his last seizure was in April 2018, and his July 29, 2019 neurological examination was normal, other than mild word finding difficulties.  (Doc. 11 at 498.  Plaintiff reported that his cognitive symptoms were improving after tapering Keppra and adding Lamictal to his medications.  Additionally, Plaintiff reported no difficulties with his daily activities, which included housework, taking care of his children, working out, building military models and teaching marksmanship. (Doc. 11 at 498).

During that examination, Plaintiff further stated that "he has had a drastic improvement in his mood since beginning therapy" and although he was feeling some stress and anxiety related to a recent move, he was feeling "alright. .not depressed at all."  (Doc. 11 at 499).  He also stated that his sleep and migraine headaches had "dramatically improved" since he began taking Lamictal, and he reported getting between 8 and 11 hours of sleep a night, which was a significant increase from his previously reported 4 hours a night.  (Doc. 11 at 499).  At the time of the examination, Plaintiff "denied headaches, auras or other physical complaints" other than a minor injury to his left hand.  (Doc. 11 at 500).  Dr. Bolanos observed that Plaintiff's speech was within normal limits for articulation, rate and fluency, although he had occasional difficulty findings words.  (Doc. 11 at 500).  His comprehension was intact, with logical and goal-directed thought

processes, although he perseverated on topics occasionally and often made grandiose statements about his past cognitive ability. (Doc. 11 at 500). Overall, he was engaged and cooperative, and "felt like he performed much better than his last evaluation in 2013." (Doc. 11 at 500).

Dr. Bolanos concluded that Plaintiff "demonstrated intact performances across all assessed cognitive domains" and noted that although he had relative weakness in fine motor speed, his overall memory and motor abilities were within the average range (or better) of performance. (Doc. 11 at 503). Dr. Bolanos noted that Plaintiff's perceived premorbid cognitive abilities were "an important part of his self-concept" and that he may tend to perceive normal cognitive errors as indicative of decline, which causes him significant distress. (Doc. 11 at 503). Based on Plaintiff's functional status, his average to superior performance across cognitive measures, his lack of seizures for over a year, and his improvement in mood symptoms, Dr. Bolanos concluded that Plaintiff did not meet the criteria for a neurocognitive disorder, and found that there were "no current neuropsychological contraindications for return to meaningful activity." (Doc. 11 at 503-504).

On September 4, 2019, Plaintiff had a telephone conversation with his neurologist, Dr. Deepali Jain, who noted that Plaintiff reported he was doing well with Lamictal, had no side effects and was experiencing improvement in his

seizures, headaches and sleep.  Dr. Jain refilled the Lamictal and discontinued Keppra.  (Doc. 11 at 560).  On October 28, 2019, Dr. Jain followed up with Plaintiff, and noted that Plaintiff reported he was doing extremely well with Lamictal, and was not having any auras or seizures.  (Doc. 11 at 702). [3]  Plaintiff stated his mood and thinking processes had improved, and his wife reported no anger issues.  Plaintiff reported sleeping better as well.  (Doc. 11 at 702).  Dr. Jain noted Plaintiff reported the Lamictal had improved Plaintiff's headache frequency from daily to mild headaches three times a week.  (Doc. 11 at 705).  On December 13, 2019, Plaintiff underwent an EEG which was normal, with no evidence of epileptiform discharges or electrograph seizures.  (Doc. 11 at 661).

On March 2, 2020, Plaintiff saw Dr. Jain again after suffering a seizure after being seizure free for over a year and a half.  (Doc. 11 at 812).  Plaintiff reported that he was under a lot of stress due to his mother's recent cancer diagnosis and a new baby expected shortly, and that he was not sleeping well.  (Doc. 11 at 812).  Dr. Jain noted the seizure was "a breakthrough due to sleep deprivation and family stress" and increased Plaintiff's Lamictal dosage.  (Doc. 11 at 815).  He further noted that Plaintiff's migraine headaches were improved with Lamictal and occurred only sporadically due to stress.  (Doc. 11 at 815).

---

[3] Plaintiff reported to Dr.  Jain that he had been having auras/complex seizures approximately twice a month since August 2019, which is inconsistent with his prior statement to Dr. Jain in September 2019.

Plaintiff also underwent vestibular physical therapy to address issues relating to dizziness.  On November 19, 2019, Plaintiff reported improvement in functional activity, which no significant dizziness since his last treatment. (Doc. 11 at 689). He showed "significant functional improvement, with reduced subjective complaints" and was discharged from vestibular physical therapy at that time. (Doc. 11 at 690).

Although Plaintiff argues the ALJ improperly discounted the findings, diagnoses and test results of his treating physicians, a review of the record reveals the exact opposite:  the ALJ reasonably and permissibly relied on the findings of the treating physicians to conclude Plaintiff was not disabled.  The Plaintiff's own treating physicians concluded that his seizure disorder and migraines were responding well to medication, as evidenced by the decreasing frequency noted in the medical records.  Plaintiff's neurological testing showed average to superior performances, with only occasional mild difficulty in finding words.  Plaintiff's mood swings and anger issues had largely subsided, and he reported situational anxiety and stress related to family issues.  Plaintiff's treating physicians concluded that he did not meet the criteria for any neurocognitive disorder and found no reason why he should not be able to return to meaningful activity.  The ALJ properly considered the opinions and findings of Plaintiff's treating VA doctors and provided legally sufficient reasons for relying on those opinions and

16

findings.

> iii.  Consulting Providers

Plaintiff does not argue the ALJ disregarded the opinion of a treating physician in favor of the opinion of an examining physician.  However, it is worth noting that the opinions of the psychological consultants, Jeffrey Prickett, Psy.D. and Lawrence Annis, Ph.D, are consistent with the findings and opinions of Plaintiff's treating providers.  Both Dr. Prickett and Dr. Annis found the objective evidence and subjective accounts of Plaintiff's daily activities supported the conclusion that there was mild to moderate overall functional impairment due to mental conditions.  (Doc. 11 at 81; 97).  Because the findings and opinions of the examining providers are consistent with those of the treating providers, there is no contradiction or discrepancy to resolve, and the ALJ properly considered the opinion testimony in her determinations.

## B.    Subjective Symptom Testimony

Plaintiff argues the ALJ ignored her own regulations by failing to analyze the mechanics of treatment in order to discount Plaintiff's testimony of his limitations.  He states the ALJ cannot provide specific, clear and convincing reasons to reject his testimony if the ALJ had considered the mechanics of treatment under SSR 96-8 and the "uncontested medical findings by virtually every health care provider in the 670 pages of medical records." (Doc. 13 at 27).

It is not clear to the Court whether Plaintiff's argument is that the number and frequency of treatment supports a finding of more severe limitations or if his argument is simply that the ALJ improperly rejected his testimony. The consideration of the effects of Plaintiff's medical treatment is a different issue than analysis of his testimony, and the Court will discuss them separately.

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

Here, the ALJ found Plaintiff met his initial burden because he produced evidence of medically determinable impairments that could reasonably be expected to cause his alleged symptoms. The ALJ then found that his statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical and other evidence in the record. (Doc. 11 at 29).

At his administrative hearing, Plaintiff testified that he felt he could "absolutely not" work on a full-time basis primarily due to his memory issues. (Doc. 11 at 58).  Plaintiff described that he would often need reminders for daily activities such as to eat and take medication.  (Doc. 11 at 56).  He also stated that his had difficulty in learning something new, as evidenced by his difficulty in understanding his father's explanation about 401k accounts.  (Doc. 11 at 58-59).  He explained that he worried that the stress of trying to learn something new would result in seizures, which would further prevent him from driving to work.  (Doc. 11 at 59).  Plaintiff also stated that he was having ongoing seizure activity and that he had severe migraines weekly or every other week.  (Doc. 11 at 53-54).

The ALJ provided a detailed summary of the medical evidence, and discounted Plaintiff's testimony as to the severity of his physical and mental impairments for various reasons.  With respect to his mental limitations, the ALJ noted that his mental examinations consistently showed minimal concentration, cognitive or social limitation.  Plaintiff's activities demonstrated an ability to perform simple tasks on a full-time basis.  The ALJ noted that after his TBI, Plaintiff was able to complete a two-year paramedic program with a 3.78 GPA, as well as teach marksmanship, drive a vehicle, make military models, and take care of his children without difficulty.  These activities were consistent with the October 2019 finding by Dr. Bolanos that Plaintiff did not meet the criteria for a

19

neurocognitive disorder and that there were no contraindications for Plaintiff returning to meaningful activity.  (Doc. 11 at 503-54).

The ALJ further discounted Plaintiff's testimony regarding inability to focus and memory issues by noting that Plaintiff's examinations showed normal expressive speech, intact comprehension, logical and goal directed thought process, with only limited difficulty findings words.  (Doc. 11 at 29).  Plaintiff's testimony regarding migraines and ongoing seizures were also inconsistent with the medical records from his treating VA providers.  Plaintiff's mental health was improving, with both Plaintiff and his wife noting an improvement in anger and a decrease in anxiety and depression.  Plaintiff was not treating with a mental health provider, as he claimed to not have mental or emotional illness.  (Doc. 11 at 847). The Court finds the ALJ provided clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's testimony regarding his neurological and mental health symptoms.

C.    **Consideration of Treatment**

Plaintiff argues the ALJ improperly failed to analyze his case under SSR 96-8, which requires the ALJ to consider the effects of the frequency and duration of Plaintiff's medical treatment on the residual functional capacity.  Plaintiff does not argue that any medical providers opined that he would be absent from work for any specific amount of time due to his impairments or his treatment; instead, Plaintiff

simply notes the number of treatments in the year from April 2019 through March 2020 and concludes that it establishes Plaintiff would consistently be absent from work for 7.2 days per month. (Doc. 13 at 26).

The RFC must be based on all relevant evidence, such as "the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." SSR 96-8p, 1996 WL 374184, *5 (July 2, 1996). Failing to consider the effect of Plaintiff's treatment needs is reversible error. *Edmunds v. Kijakazi*, 2021 WL 4452762, *6 (D. Mont. September 29, 2021). When a plaintiff "has presented evidence sufficient to establish the possibility that the frequency of [his] medical appointments may inhibit [his] ability to work on a 'regular and continuing basis', the Court should remand to the ALJ for development in the record and the appropriate consideration. *Bourcier v. Saul*, 856 Fed. Appx. 687, 691 (9th Cir. 2021). However, frequency of appointments alone cannot be a disabling medical impairment. *Goodman v. Berryhill*, 2017 WL 4265685, * 3 (W.D. WA. September 25, 2017). Instead, to be disabling, there must be evidence that the frequency of the treatment is necessitated by the Plaintiff's medical condition and that is substantiated by the evidence. *Goodman*, * 3. The ALJ should also consider whether Plaintiff could schedule medical appointments outside of working hours or grouped in such a way that he would not be precluded

21

from working.  *Goodman*, * 3.  Finally, the ALJ should also consider whether the need for the number of appointments would be ongoing, or would subside. *Bourcier*, 856 Fed. Appx. At 691.

In this case, the vocational expert testified that being off-task for more than 15% of the workday or absent two days per month would preclude all work in the national economy.  (Doc. 11 at 69).   The ALJ made no findings regarding the frequency of Plaintiff's medical appointments, the ability to schedule outside working hours, or the potential that the frequency would be ongoing.  Because Plaintiff's treatment history demonstrates the potential of exceeding those thresholds, the ALJ erred in failing to consider or discuss Plaintiff's treatment needs when determining Plaintiff's RFC.

### D.    Vocational Expert

Plaintiff argues the ALJ erred by failing to incorporate all of his impairments into the hypothetical question presented to the vocational expert.  Hypothetical questions posted to the vocational expert must set out all the limitations and restrictions of the claimant.  *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir.1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)).  If the assumptions in the hypothetical are not supported by the record, then the

vocational expert's testimony that the claimant could perform other work existing in the national economy has no evidentiary value. *Embrey*, 849 F.2d at 422.

The Court has determined the ALJ did not adequately consider Plaintiff's treatment needs in relation to Plaintiff's RFC.  This error may have affected the ALJ's hypothetical, and in turn, undermined the vocational expert's testimony that Plaintiff could perform other work existing in the national economy.

### E.    Remand

Plaintiff requests the Court remand this matter for an award of benefits. The Ninth Circuit has directed district courts to remand for an immediate award of benefits only if: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted).

Here, there are outstanding issues to be resolved. On remand, the ALJ should reconsider whether Plaintiff can perform work found in the national economy on a regular and continuing basis, based upon a hypothetical that incorporates all of Plaintiff's impairments and limitations supported by the record.

23

## IV.   <u>Conclusion</u>

For the reasons discussed above,

IT IS ORDERED that the Commissioner's decision is REVERSED and this

matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further

proceedings consistent with this opinion.

DATED this 3rd day of February, 2022,

Kathleen L. DeSoto
United States Magistrate Judge